**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICHARD WILLIAMS, | : | |
| | : | Civil Action No. 00-4795 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Counsel for Petitioner
Jean D. Barrett
Ruhnke & Barrett, Esqs.
47 Park Street
Montclair, NJ 07042

Counsel for Respondents
Arthur S. Safir
Deputy Attorney General
Division of Criminal Justice
Appellate Bureau
P.O. Box CN 086
Trenton, New Jersey 08625

**WIGENTON,** District Judge

Petitioner Richard Williams, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Roy L. Hendricks and the Attorney General of New Jersey.

For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Law Division, denying Petitioner's
motion for post-conviction relief.[1]

> The relevant events took place in the late evening
> and early morning hours of November 23 and 24, 1987.
> Sharon Gresham and several friends were gathered near
> the intersection of Scott and Orchard Streets in
> Newark, after visiting a friend in a nearby apartment.
> A second group, including the four defendants,
> congregated in the intersection at about the same time.
> Eventually, a total of between 15 and 25 people
> gathered there.
>
> Petitioner [Williams], also known as Wali Was,
> became engaged in a confrontation with Sharon Gresham.
> He supposedly called her some names and "slapped her
> butt."  Other persons on the street became engaged in
> arguments, which gradually escalated.  Teresa Robinson
> became embroiled in an argument with another individual
> and Ms. Robinson's brother came to the scene from a
> nearby building and was punched in the mouth.
>
> Sharon Gresham went to a friend's apartment and
> called her brother, Patrick Gresham, who arrived 15
> minutes later with three friends.  Randall Wilson asked
> Patrick Gresham why he had come.  Lonnie Arrington
> argued with one of Patrick Gresham's friends.  Patrick
> told Sharon to leave Williams alone and go home with
> him, but she resisted.
>
> Petitioner, who was across the street from the
> Greshams then said "clear the block" or "I'll give

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

everyone one minute to clear the block."  Petitioner
was holding a gun by his side.  Lonnie Arrington then
said "burn the mother fuckers," at which time Wilson
produced two guns.  Petitioner's brief alleges that
Williams remained on one side of the street while
Wilson, who was on the other, followed Patrick and
began shooting at him and then continued to shoot at
him while he was on the ground.  However, the brief
also acknowledges that there was testimony at trial
that petitioner fired at Patrick Gresham as he fled.
Indeed, petitioner admitted at the P.C.R. hearing that
he fired shots down Scott Street.  Gresham was
pronounced dead at University Hospital following the
incident.  All of the defendants, except for
petitioner, testified at trial.

(Opinion of Superior Court, Law Division, Essex County, at 2
(December 24, 1996).)

B.   Procedural History

Petitioner was convicted, pursuant to a jury trial in the
Superior Court of New Jersey, Law Division, Essex County, of
purposeful murder, in violation of N.J.S.A. 2C:11-3a(1) and (2);
unlawful possession of a weapon, in violation of N.J.S.A. 3C:39-
5b; and possession of a weapon with a purpose to use it
unlawfully against the person of another, in violation of
N.J.S.A. 2C:39-4a.  Petitioner was convicted along with co-
defendant Randall Wilson.  Two other co-defendants, Rodney Wilson
and Lonnie Arrington, were acquitted of all charges.

On May 1, 1990, Petiitoner was sentenced to life
imprisonment with a thirty-year period of parole ineligibility
for the murder, and a consecutive five-year term with a two-and-
one-half-year period of parole ineligibility for unlawful

possession of a weapon.  The second weapons charge was merged with the murder charge for the purpose of sentencing.

The Superior Court of New Jersey, Appellate Division, affirmed the conviction on April 14, 1994.  The Supreme Court of New Jersey denied certification on July 8, 1994.

On April 14, 1995, Petitioner filed a state-court petition for post-conviction relief ("PCR").  (Ra10 at Da22-Da28.)  The trial court denied the PCR petition on January 9, 1997.  (Ra10 at Da76.)  The Appellate Division affirmed the denial of relief on May 11, 1999.  (Ra 13, Ex.)  The Supreme Court of New Jersey denied certification on September 28, 1999.  (Ra 14.)

This Petition, filed September 28, 2000,[2] followed.[3] Briefing is complete and this matter is ready for disposition on the merits.[4]

─────────────

[2] Although the Petition appears to be untimely, see 28 U.S.C. § 2244(d), Respondents have not asserted a statute-of-limitations defense.  Accordingly, the Court will proceed to decide this matter on the merits.

[3] This Petition previously was dismissed without prejudice for failure to prosecute.  The U.S. Court of Appeals for the Third Circuit granted a Certificate of Appealability, vacated the order of dismissal, and remanded for further proceedings.  See Williams v. Hendricks, No. 08-2250 (3d Cir.).

[4] Respondents have asserted, as defenses, that certain claims are unexhausted or procedurally defaulted.  See 28 U.S.C. § 2254(b)(1).  In the alternative, Respondents have asserted that all claims are meritless.  As the record is sufficient for determination of all claims on the merits, and as Petitioner contends that all claims are exhausted and appropriate for decision here on the merits, this Court will exercise its discretion to deny any such unexhausted claims.  See 28 U.S.C.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

>    (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
>    With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
>       (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or
>
>       (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."

_____

§ 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See

Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   <u>ANALYSIS</u>

A.   <u>Right to Counsel of Choice</u>

Petitioner argues that he was deprived of his constitutional right to counsel of choice, when the trial court refused an adjournment for Petitioner to obtain new counsel.

Here, Petitioner's trial counsel, Carolyn Arch, was retained some time prior to November 1988, when pre-trial proceedings began.  (Ra1-2 at 6.)  Jury selection began more than a year later, on Tuesday, March 20, 1990.  The trial was scheduled to proceed at that time jointly against all four co-defendants, all of whom were represented by separate counsel.  Petitioner was present in court on that date.  (Ra1-1.)  The next morning, March 21, 1990, Petitioner advised the Court that he no longer wanted Ms. Arch to represent him.  Petitioner advised the court that he had decided he wanted different representation four months earlier, in November of 1989, but that he had not told Ms. Arch of his desire to obtain new counsel until March 1990.  He further stated that his family had not begun to look for new counsel until a couple of weeks before trial, during which time his family had been in touch with at least three or four other attorneys, but had not been able to find a new attorney.  Ms. Arch advised the court that Petitioner had not told her of his desire to retain new counsel until that morning.  After this discussion, the court advised Petitioner that his counsel was

8

fully prepared, had represented Petitioner ably in pre-trial proceedings, and that the court was not going to put the case off for Petitioner to find new counsel.  Accordingly, jury selection then resumed.  (Ra1-2.)

Petitioner raised this issue on direct appeal.  The Appellate Division held the claim to be "clearly without merit," but did not otherwise expound upon its reasoning.  Petitioner did not present this issue in his petition for certification on direct appeal.  Petitioner did, however, raise the claim again before the Appellate Division in his appeal of the denial of PCR relief.  The Appellate Division denied this claim as being "without merit."  Petitioner also raised this claim in his PCR petition for certification, which the Supreme Court of New Jersey denied.  Thus, the claim appears to be exhausted.

The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

"[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."  United States v. Gonzalez-Lopez, 548 U.S. 140 (2006) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)).  Cf. Powell v. Alabama, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel

of his own choice.") (emphasis added).  Erroneous deprivation of the right to counsel of choice is a "structural error," not subject to "harmless error" analysis.  Gonzalez-Lopez, 548 U.S. at 150.

The right to counsel of choice, nevertheless, "is circumscribed in several important respects."

> Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court.  Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant.  Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government.

Wheat, 486 U.S. at 159 (footnote omitted).  In addition, where there is a potential or actual conflict of interest, a trial court is allowed "substantial latitude" in refusing waivers of conflicts of interest by co-defendants.  Id. at 162-63. Moreover, the Supreme Court "has recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, ... and against the demands of its calendar." Gonzalez-Lopez 548 U.S. at 152 (citing Wheat, 486 U.S. at 163-64 and Morris v. Slappy, 461 U.S. 1, 11-12 (1983)).  Balancing such considerations, a trial court may "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."  Gonzalez-Lopez, 548 U.S. at 152.

Thus, when a criminal defendant first makes a trial court aware of dissatisfaction with counsel on the eve of trial, it may not be a denial of the right to counsel of choice for the trial court to deny a continuance for the purposes of substituting or finding new counsel.  See, e.g., Miller v. Blacketter, 525 F.3d 890 (9th Cir. 2008), cert. denied, 129 S.Ct. 972 (2009); United States v. Lyles, 223 Fed.Appx. 499, 2007 WL 1263980 (7th Cir. May 1, 2007).

Here, the decision of the state courts, that this claim is meritless, is neither contrary to nor an unreasonable application of binding Supreme Court precedent.  Petitioner waited until after jury selection had begun to advise the court that he desired new counsel, whom he had not yet located.  Even crediting Petitioner's claim that he had advised his counsel two weeks before trial that he desired to replace her, he had not been diligent either in advising his counsel of his desire to find new counsel or in seeking new counsel.  Three other co-defendants and their counsel were present and ready to proceed.  Petitioner's counsel advised the court that she was prepared to proceed. Under these circumstances, the trial court committed no constitutional error in proceeding with the trial as scheduled. Petitioner is not entitled to relief on this claim.

B.    Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel was ineffective in the following particulars: (1) failure to conduct an adequate pre-trial investigation, (2) failure to call certain witnesses, (3) failure to advise Petitioner of his right to testify in his own defense, and (4) failure to communicate with Petitioner due to his inability to pay her fees.  (Petition, ¶ 12(a).)  In his reply brief, Petitioner also alleges ineffective assistance based upon trial counsel's failure to retain a ballistics expert.

Petitioner raised this claim in his PCR petition.  Following an evidentiary hearing at which both Petitioner and his trial counsel testified, the PCR court set forth its factual findings at length, (Ra10 at Da66 to Da70), and denied relief.

> The other issue raised by petitioner is that he was denied effective assistance of counsel.  In order for a petitioner to establish a prima facie showing of ineffective counsel, the two-prong test of Strickland v. Washington, 466 U.S. 668 (1984), which was adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987), is applied.  As set forth in State v. Preciose, 129 N.J. 451 (1992) a petitioner must prove (1) that the performance of counsel was deficient; and (2) that there exists a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different.  Id. at 463-64.  In this case, petitioner has failed to meet either prong of the test.
>
> ...
>
> Based on the testimony at the P.C.R. hearing, the court disagrees with petitioner's proposed findings of fact.  Therefore, his argument fails.  As previously noted, this court finds the testimony of Ms. Arch to be credible.  She testified that she consulted with

12

petitioner on some 30 to 40 occasions.  These
consultations occurred at the jail, in the court and in
her office.  Based on these findings, counsel's
performance was not deficient as it relates to
petitioner's first allegation.

The allegation that Ms. Arch was deficient for failure
to hire a ballistics expert likewise is unpersuasive.
The court accepts Ms. Arch's conclusion that such an
expert was not critical in view of the witnesses that
testified at trial that petitioner was one of two
shooters.  In fact, as noted above, petitioner himself
admitted at the P.C.R. hearing that he was one of the
shooters.

The court also finds Ms. Arch credible as it relates to
her testimony that there was no failure to communicate
between her and her client because of a fee dispute.
The number of conferences that occurred, as detailed
above, supports this finding.  This court also
concludes that petitioner was adequately advised with
respect to his right to testify.  Again, petitioner
admitted at the P.C.R. hearing that he was advised by
Ms. Arch of his right to testify and that he was aware
of it.

Finally, this court concludes that counsel's
performance was not deficient for failure to subpoena
witnesses.  Ms. Arch is and was at the time an
experienced criminal trial attorney, having handled
between 1,000 and 1,500 criminal matters, including the
prosecution of between 450 and 500 criminal trials as
an assistant United States Attorney.  This court finds
no fault with her trial strategy or performance, given
the facts she had to work with and the witnesses
available.  Furthermore, the witnesses which petitioner
complains were not called in error would not have been
helpful to petitioner based on petitioner's own
recitation of the testimony he would have expected from
each, as detailed above.

For all of the above reasons, this court concludes that
petitioner has failed to meet the first prong of the
Strickland test, thereby failing to establish a prima
facie showing of ineffective counsel.  For this as well
as the other reasons expressed above, petitioner's
petition is dismissed.

(Ra10 at Da70 to Da75 (footnote omitted).)

The Appellate Division affirmed the denial of relief, holding all of Petitioner's arguments as being "without merit." The Appellate Division further held that, "In addition, as to the issues addressed by Judge Levy, we affirm substantially for the reasons expressed in his December 24, 1996 letter opinion."  The Supreme Court of New Jersey denied certification.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.  "When a defendant challenges a conviction, the

question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

Here, the PCR court identified the governing Strickland standard and, after a fact-finding hearing, appropriately applied the standard in denying relief. Petitioner has failed to identify any particular in which the PCR court's application of

15

the Strickland standard was contrary to, or an unreasonable application of, binding Supreme Court precedent.  Petitioner is not entitled to relief on this claim.

C.    Jury Instructions

Petitioner challenges the constitutional adequacy of the jury instructions, contending that the trial judge:

> failed to charge the jury on the element of causation in the context of the accomplice charge.  Furthermore, the manner in which the charge was delivered allowed the jury to conclude that if Petitioner did no more than fire in the air or down the street, not in the victim's direction, without more, he could be liable for murder under an accomplice theory.  Finally, the charge failed to properly set forth accomplice liability in the context of the lesser-included offense instructions which the jury received.

(Petition, ¶ 12(b).)

At trial, the court instructed the jury on causation and on accomplice liability, as follows:

> In order for you to find the defendant guilty of murder, the State must first establish beyond a reasonable doubt that the killing of Patrick Gresham was committed by the defendant and that it was done purposely or done knowingly as I have defined those terms for you.
>
> ...
>
> In your deliberations, you may consider the weapon used and the manner and circumstances of the killing, and if you are satisfied beyond a reasonable doubt that the defendant shot and killed the victim with a gun, you may draw an inference from the weapon used, that is, the gun, and from the manner and circumstances of the killing as to that defendant's purpose or knowledge.

16

If, after a consideration of all of the evidence you are convinced beyond a reasonable doubt that a defendant either purposely or knowingly <u>caused the death</u> of Patrick Gresham, then your verdict as to that defendant or defendants must e guilty.

If, however, after a consideration of all of the evidence you find that the State has failed to prove each and every element of the offense, then your verdict as to that defendant or defendants must be not guilty.

If you do not find that the State has proven beyond a reasonable doubt that a defendant or defendants purposely or knowingly <u>caused the death</u> of Patrick Gresham, you may then consider whether that defendant or defendants are guilty of the offense of aggravated manslaughter.

Accordingly to law, a person is guilty of aggravated manslaughter <u>if he recklessly causes the death</u> of another person under circumstances manifesting extreme indifference to human life.

In order to find the defendant guilty of aggravated manslaughter, the State must prove beyond a reasonable doubt the following three essential elements.  Number one, <u>that the defendant caused Patrick Gresham's death</u>; ...

With respect to the first element, that is, did the defendant cause the death of Patrick Gresham, with respect to the first element, <u>in order to find that a defendant caused Patrick Gresham's death, you must find that Mr. Gresham would not have died but for the defendant's conduct</u>.

...

Now, if you do not find that the State has proven the elements of aggravated manslaughter beyond a reasonable doubt as to any defendant or defendants in this case, you may then consider whether that defendant or defendants are guilty of the offense of reckless manslaughter.

Under the law, a person is guilty of manslaughter if he <u>recklessly causes the death [of] another human being</u>.

Reckless manslaughter is a lesser included offense of aggravated manslaughter. As to reckless manslaughter, the State must prove beyond a reasonable doubt two essential elements. They are: One, <u>that the defendant caused the death of </u>Patrick Gresham; and, two, that the defendants acted or did so recklessly.

A few moments ago I told you that with regard to the first element, you must find that the victim, Patrick Gresham, <u>would not have died but for the defendant's conduct</u>. ...

...

With regard to the charge of murder, the State contends that four men were involved in its commission. The State contends, as I said earlier, that Randall Wilson was the person, or one of the persons who shot the victim. The State also contends -- excuse me, that Richard Williams was either one of the persons who shot the victim or was an accomplice of the person who shot the victim.

As to Richard Williams, Lonnie Arrington and Rodney Wilson, the State contends they're guilty of the charge of murder because they acted as accomplices.

Under our law, a person is guilty of an offense if it is committed by his own conduct or the conduct of another person for which he is legally accountable or both.

This provision of the law means that not only is the person who actually commits the criminal act responsible for it, but one who is legally accountable for the acts of another is also responsible and punishable as if he committed the crime himself.

A person is legally accountable for the conduct of another person if he is an accomplice of such other person or persons in the commission of the offense.

As to whether Lonnie Arrington or Rodney Wilson or Richard Williams was an accomplice, the State has the

18

burden of proving beyond a reasonable doubt the following:

One, that Randall Wilson committed the crime set out in count one of the indictment; two, that Lonnie Arrington and/or Rodney Wilson and/or Richard Williams was the accomplice of Randall Wilson.

A person is an <u>accomplice</u> of another person in the commission of a crime <u>when, with the purpose of promoting or facilitating the commission of the crime, he solicits such other person to commit it or he aids, agrees or attempts to aid such other person in planning or committing the offense.</u>

In order to prove that a defendant was an accomplice of another, the State must prove the following beyond a reasonable doubt: As I said earlier, that Randall Wilson committed the crime set out in the first count of the indictment.

Two, that Lonnie Arrington, that Rodney Wilson, that Richard Williams acted purposely to promote, that is, to bring into being or to advance or to launch the event or to fill -- or to facilitate, that is, to make easier, to accomplish that particular crime charged in the first count.

As I told you previously, under our law a person acts purposely with respect to his conduct or a result of his conduct if it is his conscious object to engage in conduct of that nature and to cause such a result.

The State must also prove beyond a reasonable doubt that Lonnie Arrington, that Rodney Wilson, that Richard Williams solicited Randall Wilson to commit the crime set out in the first count of the indictment, and in this regard to solicit means to strongly urge, suggest, entice, lure or proposition or -- and/or that any of the three named individuals, Lonnie Arrington, Rodney Wilson or Richard Williams, aided, assisted, supported or supplemented the efforts of Randall Wilson.

If you find that Lonnie Arrington and/or Rodney Wilson and/or Richard Williams purposely solicited or aided another person in the commission of the crime,

you must consider him or them as if they or he committed the crime himself or themselves.

To prove a defendant's criminal liability, the State does not have to prove his accomplice status by direct evidence of a formal plan to commit a crime.

It does not have to be a verbal agreement by all who are charged.  The proof may be circumstantial. Participation and agreement can be established from conduct, as well as the spoken words.

Mere presence at or near the scene does not make one a participant in the crime nor does the failure of a spectator to interfere make him a participant in the crime.

It is, however, a circumstance to be considered with the other evidence in the case in determining whether that person was present as an accomplice, but presence is not, in itself, conclusive evidence of that fact.

Whether presence has any probative value depends upon the total circumstances.

To constitute guilt there must exist a community of purpose and actual participation in the crime committed.  While mere presence at the scene of the perpetration of a crime does not render a person to participate in it, proof that one is present at the scene of the commission of the crime without disproving or opposing it is evidence from which, in connection with other circumstances, it is possible for the jury to infer that that individual assented thereto, lent to it his countenance and approval, and was thereby aiding the same.

It depends upon the totality of the circumstances as those circumstances appear to you from the evidence.

Keep in mind, however, that one cannot be held to be an accomplice unless you find that he possessed the same criminal state of mind that is required to be proven against the person who actually committed the criminal act.

In order to convict a defendant as an accomplice to the crime charged, you must find that that defendant has the purpose to participate in that particular crime.  That defendant must act with the purpose of promoting or facilitating the commission of the substantive offense with which he is charged.  It is not sufficient to prove only that a defendant had the knowledge, that a co-defendant was going to commit the crime charged or that the defendant knowingly facilitated the commission of the crime charged.

The State must prove, not only that a defendant acted knowingly, but also that it was that defendant's conscious objective that the specific crime charged be committed.

(Ra1-16 at 84, 85-87, 90-91, 92-99 (emphasis added).)

On direct appeal, Petitioner claimed that, "The court's charge on accomplice liability was confusing and prejudicial as applied to [Petitioner's] role in the offense ..." (Point I) and, pro se, claimed that, "The trial court gave fatally flawed instructions on accomplice liability wherefore a new trial must be granted."  (Ra2; Ra4).  Petitioner argued that, under the instructions, he could be found guilty as an accomplice, "if [he] did no more than fire in the air, or down the street, and never shot at the victim."  (Ra2 at 11.)  Petitioner also argued, pro se that the instructions were flawed in that they relieved the State of proving the "knowing" or "purposeful" elements required for a murder conviction.  The Appellate Division rejected the challenge to the jury instructions.

We reject the challenges to the accomplice charge. We are satisfied that the court correctly stated the applicable principles of law governing accomplice liability.  Although the judge did not include

21

illustrative or hypothetical "what if" examples arguably suggested by the proofs, we are thoroughly satisfied that his instructions provided clear and comprehensible guidance for the jury's fair assessment of defendant's culpability.

State v. Bielkiewicz, 267 N.J. Super. 520 (App. Div. 1993), decided after the briefs were filed, does not compel a different conclusion.  The State's proofs here were that defendant and co-defendant Randall Wilson were both armed and that both shot at the victim, inflicting four bullet wounds.  The proofs did not show that co-defendants Rodney Wilson and Lonnie Arrington fired any weapon.  Defendant's position at trial, as expressed in his attorney's closing argument, was that the State had failed to product "evidence sufficient to connect [defendant] to the death," that defendant "wasn't involved in the shooting" and, indeed, that defendant did not have a gun at all.  No suggestion was made on his behalf that his culpability might have been only as an accomplice to a lesser offense, or that his state of mind mitigated his culpability.  The jury found both defendant and Randall Wilson guilty of "purposely or knowingly" murder the victim "by [their] own conduct," and acquitted Rodney Wilson and Lonnie Arrington of all charges.

Given that state of the record, defendant cannot persuasively urge that he was prejudiced by the absence of a jury instruction that he could be found guilty of a lesser homicide or assault offense as an accomplice of a co-defendant found guilty of murder.  No such defense, much less a request to charge, was offered on behalf of defendant.  We will not speculate whether a Bielkiewicz charge would have made the murder conviction more likely, or whether defense counsel contemplated that possibility.  See State v. Choice, 98 N.J. 295, 300 (1985).  We are satisfied, however, that the record developed at trial does not "clearly indicate" the appropriateness of such a charge.  Id. at 299.

(Opinion of Appellate Division at 3-4 (April 14, 1994).)  The

Supreme Court of New Jersey denied certification as to this

issue.  (Ra9.)

In his PCR motion, Petitioner re-cast his challenge to the jury instructions as a failure to properly charge causation. Petitioner argued, "The court's charge to the jury was erroneous and fatally flawed where the court failed to charge the jury with the requisite elements of causation, N.J.S.A. 2C:2-3, thus depriving petitioner of the lesser included offense to murder." (Ra10 at Da29, Da56 to Da62).

Having noted that the challenge to the jury instruction on "causation" was virtually identical to the challenge on direct appeal to the jury instruction on "accomplice liability," the PCR court nevertheless addressed the issue on the merits.

> Petitioner's argument that the court failed to charge the jury as to the requisite elements of causation under N.J.S.A. 2C:2-3 is without merit. N.J.S.A. 2C:2-3(b) states that "[w]hen the offense requires that the defendant purposely or knowingly cause a particular result, the actual result must be within the design or contemplation, as the case may be, of the actor, or, if not, the actual result must involve the same kind of injury or harm as that designed or contemplated and not be too remote, accidental in its occurrence or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense." A review of the relevant provisions of the trial court's charge shows that the court did charge the jury appropriately as to causation. The court defined "purposely" and "knowingly" and instructed the jury that "whether the killing is committed purposely or committed knowingly, causing the death or causing serious bodily injury must be within the design or contemplation of the defendant." The court continued: "The essential determination for you to make in regard to the charge of murder in this case is whether the defendants committed the killing purposely or committed the killing knowingly as I have defined those terms for you." The court made it clear that the result caused

23

> by petitioner had to be within his design or
> contemplation.  This court finds no error in the
> charge.

(Ra10 at Da70-73 (footnote omitted).)  Petitioner did not further

raise this issue on appeal.

Generally, a jury instruction that is inconsistent with

state law does not merit federal habeas relief.  Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); <u>Sandstrom v. Montana</u>, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis.  <u>Smith v. Horn</u>, 120 F.3d at 416-17; <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  <u>Id.</u> at 418 (citing <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence."  <u>Cool v.</u>

25

United States, 409 U.S. 100, 104 (1972).  "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994); see also Cage v. Louisiana, 498 U.S. 39, 41 (1990).  As the Supreme Court explained in Victor,

> so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.

Victor, 511 U.S. at 6 (citations and internal quotation marks omitted).

"[A] misdescription of the burden of proof ... vitiates all the jury's findings.  Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (emphasis in original).  Such an error is considered structural and thus is not subject to harmless error review.  See id. at 280-82.  But see Neder v. United States, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

Here, the Supreme Court of New Jersey has held that the instructions fully comport with state law.  Taken as a whole, it is clear that the instructions correctly instruct the jury as to the State's burden of proof "beyond a reasonable doubt" with respect to every element of the crime charged, including causation, and including with respect to accomplice liability and

26

lesser included offenses.  Petitioner is not entitled to relief on this claim.

D.    Prosecutorial Misconduct

Petitioner contends that, in his summation, the prosecutor "mischaracterized and exaggerated" the evidence.  For example, Petitioner challenges the prosecutor's remarks that the victim was shot in the back, as opposed to the buttocks, and that the victim was gunned down like a dog.

The Appellate Division held that this claim was "clearly without merit."  (Ra7 at 4.)  Petitioner did not raise this claim before the Supreme Court of New Jersey.  (Ra8.)

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.
> ...  Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the

27

defendant's guilt and offering unsolicited personal views on the evidence." United States v. Young, 470 U.S. 1, 7 (1985).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82. Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, the state court determination that this claim was meritless is neither contrary to nor an unreasonable application of Supreme Court precedent.  Clearly, the prosecutor's characterizations, in summation, of the events surrounding the victim's murder did not infect the trial with unfairness. Petitioner is not entitled to relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

29

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.




<u>S/Susan D. Wigenton</u>
Susan D. Wigenton
United States District Judge

Dated: July 20, 2009

30